```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

BRIAN McKENNA,                    :
         Plaintiff
                                  :

         vs.                      :    CIVIL NO. 1:CV-08-0682

                                  :

RUSSELL SCHAUER, et al.,
         Defendants               :


*M E M O R A N D U M*

*I.   Introduction*

      We are considering a motion for partial summary judgment filed by the Defendant, Russell Schauer ("Schauer"). Schauer argues that no reasonable jury could find in favor of the Plaintiff, Brian McKenna ("McKenna"), on his claims for 1) false arrest, 2) First Amendment retaliation and 3) intentional infliction of emotional distress ("IIED").[1]

      We will examine the motion under the well-established standard. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008). Upon review of the motions, the supplemental briefs, and the record, we will grant Defendant's motion for partial summary judgment.

---

[1] Schauer is not seeking summary judgment as to the use of excessive force claim. This claim will proceed to trial.

*II.   Background*

   *A.   Factual Background*

Plaintiff's claims arise from two encounters with Schauer, a police officer for Springettsbury Township.  The first occurred on November, 26, 2006 when McKenna was riding his all-terrain vehicle ("ATV") on private property owned by Norfolk Southern Railroad and/or the Army Corps of Engineers.  Def.'s Statement of Material Facts ("SMF") ¶ 2.  At the time, Schauer was off-duty and in civilian attire.  *Id.* at ¶ 3.  He was at the location to check on one of his hunting stands that he had set up next to property owned by Norfolk Southern and the Army Corps of Engineers.  Schauer was on property owned by the Army Corps of Engineers when he heard McKenna's ATV near the railroad tracks.  *Id.* at ¶ 8.  He stopped McKenna and called back up.  After their arrival, Springettsbury Township police took the Plaintiff's name and address, and released him.  *Id.* at ¶ 10.  McKenna later complained to the Chief of Police and the York County District Attorney about the behavior of Schauer during the incident.  Def.'s SMF ¶ 12.

The second encounter occurred on April 9, 2007 when Police Officer Wales arrested McKenna pursuant to three active warrants.  *Id.* at 13.  Defendant Schauer, on duty at the time, arrived on the scene and recognized McKenna from the November 26th incident.  At this time, Schauer allegedly screamed and

2

spit at the Plaintiff while he was handcuffed in the rear seat of Officer Wales' police vehicle.  *Id.* at ¶ 21.

    B.  Procedural History

On April 11, 2008, McKenna initiated this action by filing a Complaint against Schauer as well as Springettsbury Township and three unidentified Township police officers. Plaintiff then filed an Amended Complaint on April 22, 2008. The Amended Complaint alleged: (1) federal false arrest/unlawful seizure against Schauer and John Does I and II based on the encounter of November 26th; (2) use of excessive force by Schauer; (4) IIED by Schauer; (5) federal false arrest/unlawful seizure against John Doe III involving the April 9, 2007 incident; (6) First Amendment retaliation against Schauer; (7) Conspiracy against Schauer and John Doe III involving the April 9, 2007 incident; and (8) *Monell*[2] claim against Springettsbury Township.

Plaintiff agreed to voluntarily dismiss the (1) false arrest/unlawful seizure and conspiracy claims arising from the April 9, 2007 incident, (2) all claims against Springettsbury Township, and (3) all claims against the "John Doe" officers. Stipulation of Voluntary Dismissal, January 14, 2009.  Four claims remain against Schauer, namely: (1) use of excessive

---

    [2]  *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

force; (2) false arrest; (3) First Amendment retaliation; and (4) IIED.

*III. Discussion*

    *A. False Arrest*

McKenna alleges that Schauer violated his Fourth Amendment right to be free from false arrest. Schauer argues that he had probable cause to arrest McKenna for criminal trespass for riding his ATV on private property owned by Norfolk Southern and/or the Army Corps of Engineers. Schauer contends that the existence of probable cause defeats any claim for false arrest.

A police officer violates a person's right to be free from false arrest when he arrests a person without probable cause. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir. 1995). At trial, a plaintiff would have to demonstrate that "the police *lacked* probable cause" in order to prevail on a claim of false arrest. *Id.* (emphasis added). "The proper inquiry...is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988); *Groman*, 47 F.3d at 634. Thus, in order to proceed on his false arrest claim, McKenna must present evidence that Schauer lacked probable cause to arrest him.

The existence of probable cause is an issue of fact. *Groman*, 47 F.3d at 635 (citing *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 191 (3d Cir. 1984)). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)(citations omitted). Our analysis is based upon "the objective facts available to the officers at the time of the arrest." *Taylor v. City of Philadelphia*, 144 Fed. Appx. 240, 244 (3d Cir. 2005)(citation ommitted). We must examine the totality of the circumstances in determining whether probable cause existed. *Taylor*, 144 Fed. Appx. at 244.

The standard for finding probable cause is lower than that required for conviction. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). "Probable cause does not require the same type of evidence of each element of the offense as would be needed to support a conviction." *Id.* (citations omitted). In other words, the validity of the arrest does not depend on whether the suspect actually committed the crime. *Id.* More importantly, it is irrelevant to our analysis as to the crime with which a suspect is eventually charged, or whether the person is later acquitted of the crime. *Id.*

The Third Circuit has held that the question of probable cause in a § 1983 case is, generally, one for the jury. *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998)(probable cause in a malicious prosecution claim); *Taylor* 144 Fed. Appx., at 244. However, summary judgment is appropriate on McKenna's false arrest claim if, taking all of his allegations as true and resolving all inferences in his favor, a reasonable jury could not find a lack of probable cause. *Montgomery*, 159 F.3d at 124; *Taylor*, 144 Fed. Appx. at 244.

We must examine the elements of the crime to determine whether probable cause existed to arrest McKenna for criminal trespass. *Wright*, 409 F.3d at 602. Criminal trespass involves "either entering or remaining in a place, while knowing that one is not licensed or privileged to do so." *Commonwealth v. Walker,* 559 A.2d 579, 582 (Pa. Super. 1989)(citing 18 Pa. C.S.A. § 3503).[3] Probable cause exists when the facts and

---

[3]Section 3503 of the Pennsylvania Crimes Code provides:
**Criminal Trespass**

**(a) Building and occupied structures.-**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof...

6

circumstances are sufficient for a person of reasonable caution to believe that the suspect: (1) entered or remained in a place, (2) knowing that he was not licensed or privileged to do so.

When viewing the evidence in the light most favorable to the Plaintiff, we assume he entered the railroad and/or the Army property under the mistaken belief that he was licensed or privileged to do so, due to his prior years of having engaged in such activity.  However, his mistaken belief is irrelevant to our inquiry.  Even if he lacked the requisite knowledge to commit criminal trespass, "we must evaluate whether the totality

---

**(b) Defiant trespasser.-**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

    (i) actual communication to the actor;

    (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; [or]

    (iii) fencing or other enclosure manifestly designed to exclude intruders...

**(b.1) Simple trespasser.-**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place for the purpose of:

    (i) threatening or terrorizing the owner or occupant or the premises;

    (ii) starting or causing to be started any fire upon the premises;

    (iii) defacing or damaging the premises...

7

of circumstances was sufficient to justify a reasonable belief on the part of [Schauer] that [McKenna] had committed a crime." *Wright*, 409 F.3d 603.

McKenna admitted that he was on Norfolk Southern Railroad property when he was stopped by Schauer. (Def.'s SMF ¶ 2, admitted in Pl.'s Counter statement ¶ 2). McKenna also does not dispute that Norfolk Southern Railroad and the Army Corps of Engineers contracted with Springettsbury Township Police to patrol their respective properties and stop trespassers from using motorized vehicles on said property. (Def.'s SMF ¶ 6, admitted in Pl.'s Counter statement ¶ 6). These facts, viewed in the light most favorable to Plaintiff, raise the inference that Schauer was aware of the police department's contract to patrol the area and prevent persons from trespassing. It is also a reasonable inference that Schauer, having heard the Plaintiff's ATV and stopping it, believed that McKenna was on the property illegally.

Plaintiff offers no evidence to rebut these facts other than to continue to assert that he was not trespassing and Schauer had ulterior motives in stopping him.[4] *See* Pl.'s Br. in Opp. at 7-8. As we indicated earlier, the Plaintiff's guilt or innocence for criminal trespass is irrelevant to our analysis. Our only concern is whether there is sufficient evidence for a

---

[4] Plaintiff alleges that Schauer targeted him because of a dispute over stolen tree pegs owned by Schauer. Pl.'s Br. in Opp. at 8.

8

reasonable jury to determine that Schauer lacked probable cause to arrest the Plaintiff. We believe the evidence indicates that a reasonable jury could not conclude that Schauer lacked probable cause. The evidence shows that the Plaintiff entered the property without permission. The evidence also shows that Schauer reasonably believed, in light of the police department's contract, that McKenna was on the property without authorization. We conclude that Schauer had probable cause to arrest McKenna and there is no issue of material fact on this point. We will grant Defendant's motion for summary judgment on Plaintiff's false arrest claim.[5]

---

[5] If the issue of probable cause is "too close to call," Defendant argues that he would be entitled to qualified immunity. While we believe probable cause was clearly established, we will discuss qualified immunity. Qualified immunity protects law enforcement officials who have violated a person's rights if the rights were not "clearly established" when the official acted. *Mills v. City of Harrisburg*, 589 F.Supp.2d 544, 553 n. 8 (M.D. Pa. 2008). An official will be susceptible to suit if it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007)(quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "The court should ask whether the [official] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed." *Hunter v. Byrant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). We believe Schauer's conduct, in light of the department's contract and the location where the Plaintiff stopped, was reasonable. If the facts were insufficient to support a finding of a probable cause, a reasonable police officer would nevertheless believe that probable cause existed. Therefore, Schauer would be entitled to qualified immunity as to the false arrest claim.

*B.   First Amendment Retaliation*

In order to prove First Amendment retaliation, a plaintiff must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person or ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *See also Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). If the claimed retaliation is a criminal charge, a defendant will have the opportunity to show that the action would have been taken, "independently of any retaliatory animus." *Hartman v. Moore,* 547 U.S. 250, 260-61, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); *Benkoski v. Wasilewski*, No. 07-CV-0197, 2008 4414741, at *8 (M.D. Pa. Sept. 24, 2008). "[E]stablishing the existence of probable cause will suggest that the prosecution would have occurred even without a retaliatory motive." *Hartman*, 547 U.S. at 261; *Benkoski*, 2008 WL 4414741 at *8.

Defendant argues that the Plaintiff fails to show a causal connection between the protected conduct and his arrest by Officer Wales.[6] Def.'s Br. in Supp. at 10. Specifically, he contends that McKenna offers no evidence that Officer Wales'

---

[6] Schauer does not dispute that McKenna engaged in constitutionally protected conduct, namely filing complaints against the Defendant with the Chief of Police and the York County District Attorney.

10

arrest of the Plaintiff was at Defendant Schauer's direction. He contends that Officer Wales had probable cause, based on three active warrants, to arrest the Plaintiff.

While the Third Circuit has not directly addressed the issue of probable cause, other courts, including courts within the Middle District, have determined that the existence of probable cause "prohibits a plaintiff from prosecuting a First Amendment retaliation claim." *Gallis v. Borough of Dickson City*, No. 05-CV-551, 2006 WL 2850633, at *4 (M.D. Pa. Oct. 3, 2006); *See, e.g., Benkoski,* 2008 WL 4414741; *Hughes v. Sarkis*, No. 04-CV-1191, 2005 WL 3093395, at *7 (M.D. Pa. Nov. 18, 2005); *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  Therefore, our inquiry is whether there is a genuine issue of fact on whether probable cause existed for Officer Wales to arrest the Plaintiff.

The evidence indicates, based on the active arrest warrants, that Officer Wales had probable cause to arrest the Plaintiff.[7]  Def.'s Ex. F.  Plaintiff offers no evidence that the warrants were part of a retaliatory scheme or issued in retaliation for his filing of complaints.  Based on the active warrants, we conclude that Officer Wales had probable cause to stop and arrest the Plaintiff on April 9, 2007.  Since probable

---

[7] Two warrants were issued for parking violations and one for bad checks.

cause existed, McKenna is unable to show a causal link between the constitutionally protected conduct and the alleged retaliatory arrest.

Finally, Defendant argues that the alleged verbal abuse of the Plaintiff, while he was under arrest on February 9, 2007, did not rise to the level of a constitutional violation.[8]

It is well established that verbal harassment or threats will not state a constitutional claim. *Balliet v. Whitmire*, 626 F.Supp. 219, 228-29 (M.D. Pa. 1986); *Panton v. Boom*, No. 07-CV-0350, 2007 WL 853848, at *2 (M.D. Pa. Mar. 20, 2007).  We conclude that the single incident of verbal harassment is insufficient to deter a person of ordinary firmness from exercising his First Amendment rights.  We will therefore grant Defendant's motion for summary judgment.

---

[8] We note that the Plaintiff's statements show that the Defendant did not intentionally spit on him.  During the course of his deposition, McKenna was questioned about the allegation that Schauer did so:

> Q. Okay.  And then it says, and then Schauers [sic] spit in the plaintiff's face.
>
> Is that just when he was yelling or did he actually spit in your face?
>
> A. While he was yelling
> \*\*\*\*\*
> Q. And spit in your face.  He didn't do that?
>
> A. No.

12

*C.   Intentional Infliction of Emotional Distress*

The Plaintiff brings a claim of IIED against Schauer. McKenna's claim is a state tort claim and the substantive law of Pennsylvania governs. He argues that Schauer's alleged actions, pointing a loaded gun in his face and screaming "false and baseless accusations" that the he had stolen Schauer's property, resulted in "extreme stress and emotional trauma that manifested itself in the form of physical symptoms including headaches, nightmares, loss of sleep and TMJ." Am. Compl. ¶¶ 40, 47-49.

We look to Section 46 of the Restatement (Second) of Torts for the minimum elements necessary for a claim of IIED. *See Taylor v. Albert Einstein Medical Center,* 562 Pa. 176, 181, 754 A.2d 650 (Pa. 2000); *Morrell v. Chichester School Dist.*, No. 04-2049, 2005 WL 1875526, at *4 (E.D. Pa. Aug. 5, 2005).[9] Section 46 provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46 (1965).

"The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an 'extreme or outrageous type.'" *Cox v. Keystone Carbon Co.*,

---

[9] The Pennsylvania Supreme Court has never expressly recognized IIED as a cause of action. *Taylor*, 754 A.2d at 652. However, the court indicated that if it were to recognize IIED, a plaintiff would have to prove, at minimum, the elements set for in Section 46.

13

861 F.2d 390, 395 (3d Cir. 1988). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (citations omitted). The comments to § 46 provide that liability does not "extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d (1965). In Pennsylvania, the element of outrageousness is regarded as an issue of fact initially reserved for the court. *Swisher v. Pitz,* 868 A.2d 1228, 1231 (Pa. Super. 2005); *Mills v. City of Harrisburg,* 589 F.Supp.2d 544, 558 n.14 (M.D. Pa. 2008).

      In this case, McKenna claims the conduct of Schauer rises to the level of outrageous conduct outside all bounds of decency. We believe the screaming and alleged spitting only amounted to insults and indignities, and not conduct sufficiently outrageous to support an IIED claim. Additionally, even if Schauer pointed his firearm at the Plaintiff during the arrest, the conduct is not sufficiently outrageous to support an IIED claim.[10] We will grant the motion for summary judgment.

---

[10] We note that no medical evidence has been offered to support Plaintiff's claim for IIED. *Kazatsky v. King David Memorial Park, Inc.*, 527 Pa. 183, 527 A.2d 988, 995 (Pa. 1987)("[I]f section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence"); *See also Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. 1996).

*IV.   Conclusion*

Based on the preceding discussion, we will grant Defendant's motion for partial summary judgment. Pursuant to the stipulation agreed to by the parties, we will dismiss all claims against Springettsbury Township and the John Doe officers. They will be dismissed from the action.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge

Date: April 6, 2009

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

BRIAN McKENNA,                     :
     Plaintiff
                                  :

     vs.                           :   CIVIL NO. 1:CV-08-0682

                                  :
RUSSELL SCHAUER, et al.,
     Defendants                    :

## O R D E R

AND NOW, this 6th day of April, 2009, upon consideration of the Defendant's motion for partial summary judgment (doc. 14), and pursuant to the accompanying Memorandum, it is ordered that:

    1. Defendant Russell Schauer's Motion for Partial Summary Judgment is granted.

    2. Judgement is entered in favor of Defendant Russell Schauer and against Plaintiff Brian McKenna as to the claims of 1) false arrest, 2) First Amendment retaliation and 3) intentional infliction of emotion distress.

    3. Pursuant to a stipulation filed January 14, 2009 (doc. 13), the claims against Defendant Schauer concerning the April 9, 2007 incident, and all claims against Springettsbury Township and the John Doe Defendants are dismissed with prejudice.

    4. Springettsbury Township and the John Doe Defendants are dismissed from this action.

       5.  What remains for trial is Plaintiff's use of excessive force claim against Defendant Schauer on November 26, 2006.

                              <u>/s/William W. Caldwell</u>
                              William W. Caldwell
                              United States District Judge